IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:19-CR-00418 SWW |
| | ) | |
| BILAL AL-RAYANNI | ) | |
| aka BILAL KASSIM ALAWDI | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**
**(sentencing date August 19, 2022)**

In the first two PSRs in 2021, there was no mention of the "victim related adjustment" of the crime of terrorism in ¶ 21. There is also no "specific offense characteristic" in ¶ 20. In the plea agreement (Doc. 68), the parties stipulate that this is a base offense level of 26 (§ 2M.5.3) with a reduction of 2 or 3 levels for acceptance of responsibility. The criminal history category shown in ¶ 32 is I.  Comments were made and the PSR was final with Draft 2.

In an unexpected revised Draft 3 PSR in October 2021, we find the PSR writer has decided that the "victim related adjustment" in ¶ 21 should be a +12 terrorism enhancement under § 3A1.4. There is also now a "specific offense characteristic" in ¶ 20 of +2 for assisting in a violent act under § 2M5.3(b)(1). This carries with it a criminal history category of IV.  Defense counsel didn't even notice this remarkable increase for months.

So, defendant pled guilty thinking he's a 23(I) with exposure of 46-57 months [3.8-4.8 years], which both sides apparently contemplated, but now Probation wants him to be a 40(IV) (40 − 3 = 37) with exposure of 292-365 months [24⅓–30½ years]. However, ¶ 3A of the plea agreement says the maximum sentence is 20 years:

3. PENALTIES:
   A.  STATUTORY PENALTIES: The penalty for the charge set forth in Count One is not more than twenty years' imprisonment, a fine of not more than

1

$250,000, any term of years and up to life of supervised release, and a $100 special assessment.

## I.  Objection to the Enhancements

Defendant objects to the enhancements because they don't factually or legally apply to him

or his crime.

What he pled to, Doc. 68 ¶ 2:

> 2. ELEMENTS OF THE CRIME:  The parties agree the elements of the offense to which the defendant will plead guilty are:
> A. The defendant knowingly provided material support or resources to a foreign terrorist organization;
> B. the defendant knew that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and
> C. the defendant is a national of the United States or a permanent resident alien.

These elements and the facts don't even match the enhancements.  Defendant, as any

sentient person would, had to know that Al'Qaida was a terrorist organization based on September

11, 2001.  There are, however, no facts showing that he had engaged in any "terrorist activity or

terrorism."

Defendant was born and raised in Yemen. He came to the U.S. at a really young age and

was naturalized as a citizen.  He went to his homeland of Yemen to visit family for six months in

July 2014 to January 2015.   He was 23 at the time.

Yemen was just beginning a civil war.  A two paragraph summary:

> Yemen's civil war began in 2014 when Houthi insurgents—Shiite rebels with links to Iran and a history of rising up against the Sunni government—took control of Yemen's capital and largest city, Sana'a, demanding lower fuel prices and a new government. Following failed negotiations, the rebels seized the presidential palace in January 2015, leading President Abd Rabbu Mansour Hadi and his government to resign. Beginning in March 2015, a coalition of Gulf states led by Saudi Arabia launched a campaign of economic isolation and air strikes against the Houthi insurgents, with U.S. logistical and intelligence support.

2

. . .

Meanwhile, the conflict continues to take a heavy toll on Yemeni civilians, making Yemen the world's worst humanitarian crisis. The UN estimates that 131,000 of the estimated 233,000 deaths in Yemen since 2015 are the result of indirect causes like food insecurity and lack of access health services. Nearly twenty-five million Yemenis remain in need of assistance, five million are at risk of famine, and a cholera outbreak has affected over one million people. All sides of the conflict are reported to have violated human rights and international humanitarian law.

Center for Preventive Action, War in Yemen (updated May 4, 2022), https://on.cfr.org/3QNP6v9.

Defendant left Yemen and came back here in January 2015 before the civil war got that extreme.

While there, as an able-bodied male, he was essentially impressed into Al'Qaida and could not effectively resist.  His role:  he was "security" on truck with others for some Al-Qaida leader involved in the Yemen civil war in the country of his birth.  Most notably for the U.S. justice system, defendant did not a thing to put the United States or any other country at risk. Nor was any citizen or property of the U.S. put at risk. Everyone knows what Al'Qaida did to the U.S. on September 11, 2001[1] which is how that group earned its terrorist organization designation.  In Yemen, it was a different story.

But defendant's actions in July 2014–January 2015 have nothing to do with the United States or our people or property.  There is no evidence whatsoever defendant fired a gun, pointed a gun at a person, harmed anyone, or threatened anyone or damaged any property. Nothing. About all he did was ride in a truck with a gun in Yemen during the civil war, albeit with a Yemeni Al'Quida figure.  He freely admitted to the FBI what he did because he was in Yemen at the time it all happened, there were no acts of violence against any persons or property, and he did nothing to hamper the interests of the United States. There is no evidence he joined or aided ISIS even though

---

[1] Born in July 1991, defendant was 10 years old in September 2001.

he had ISIS videos on his phone.[2]

In Yemen, every male has a gun.[3]  Civil war was just starting.

Therefore, we submit the facts don't even describe a terrorism offense under 18 U.S.C. § 2332b. Yes, Al'Qaida is Al'Qaida, but that's it.  And, if it doesn't fairly describe what defendant did, then the +12 enhancement cannot apply.  *See United States v. Parr,* 545 F.3d 491 (7th Cir. 2008) (remanding on other grounds). Defendant was "security" in Yemen for an Al'Qaida local leader during the Yemeni civil war.  That has nothing to do with terrorism, and it's not a "federal act of terrorism" under U.S.S.G. § 3A1.4, and *see* its Application Note 4, because there is nothing in the stipulated or known facts that defendant sought to intimidate or coerce anyone in Yemen.

Therefore, defendant objects, and this enhancement should be rejected.

## II.  Departure or Variance:  The "terrorism enhancement" is never applied to the January 6th insurrectionists and others in, and it should not be here

If the court does not reject the terrorism enhancement, the court should depart or vary downward to not apply it at all because of a potential denial of equal protection of enhancements applied to other U.S. citizens prosecuted in the last two years.

Under the factors in 18 U.S.C. § 3553, the court needs to compare this crime and offender to others. This occurred in Yemen in 2014–15 and was prosecuted starting in 2019.  No interest of

---

[2] Al'Qiada generally seeks war against the U.S. and Europe, whereas ISIS spreads its violence within the Muslim world. "ISIS Vs. Al-Qaeda: What's The Difference And Does It Matter?" Georgetown University, Global Engagement (2016), https://bit.ly/3QzU12T.
Having videos about ISIS is because ISIS appears just crazy. A lot of people have seen ISIS videos without joining them.  Many Americans not in Yemen have, too, just being curious: what is ISIS all about? Occasionally, the American press showed internet videos of ISIS murders and war crimes.

[3] Many people in the U.S. have at least one gun, too, since firearms outnumber people.  In 2017 there were an estimated 393,000,000 privately owned firearms in the U.S. for 330,000,000 people. Aaron Karp, "Estimating Global Civilian Held Firearms Numbers"(June 2018), https://bit.ly/3dEmqGs (accessed Aug. 17, 2022 via Wayback Machine).

the U.S. or the safety of Americans was ever at risk.

## A. January 6th insurrection cases don't apply the terrorism enhancement even though it fits

In 2021, we had the January 6th insurrection, a crime involving thousands of people who sought to coerce the U.S. Senate to not certify the 2020 presidential election. That crime begs for the terrorism enhancement under U.S.S.G. § 3A1.4. Apparently none of them have it applied.[4]  One can tell from the sentencing ranges mentioned in the press: 4 to 7 years for the worse, most violent offenders.  If § 3A1.4 applied, they'd all be 24 years and up.

If *United States v. Dowell,* 430 F.3d 1100, 1109 (10th Cir. 2005),[5] and *United States v. Harris,* 434 F.3d 767 (5th Cir. 2005),[6] are any guide, all the 800 January 6th defendants charged thus far are potentially subject to this enhancement for trying to intimidate the Senate and the Vice President[7] into ignorring the law on Presidential succession. Of those prosecuted for the most serious crimes involving assaults on law enforcement officers are getting serious jail time, *not one*

---

[4] Joshua T. Carback, *Charging Riots and Insurrections at the Seat of Government,* 49 AM. J. CRIM. L. 1 (2021).

[5] Attempting to firebomb an IRS office:

For the terrorism enhancement to apply in this case, then, Dowell's offense must have involved an offense 1) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and 2) that violated 18 U.S.C. § 844(f)(2). Because the jury's verdict encompassed these two factual findings, the district court did not violate the Sixth Amendment by applying the terrorism enhancement.

[6] Firebombing a municipal building with a Molotov cocktail to destroy evidence of a state crime.

[7] Chanting "Hang Mike Pence" after the President at the time called him out for having the audacity to follow the law and Constitution. *See, e.g.,* "Trump expressed support for hanging Pence during Capitol riot, Jan. 6 panel told" (Politico May 25, 2022), https://politi.co/3QN7wfo; "Cheney states Trump said on Jan. 6 that Pence 'deserves' to be hanged" (Wash. Post, June 10, 2022), https://wapo.st/3A6ZwPO.

*is accused of the terrorism enhancement.* They commit a heinous crime in Washington D.C. designed to overthrow the 2020 Presidential Election. The terrorism enhancement fits, but the government isn't seeking its application in any of the 800 or so pending cases there.  Defendant, however, for whatever reason feels compelled to associate with Al'Qaida while in Yemen and he is hit with this enhancement? And that just boggles the mind, and it makes no legal sense.

Defendant also submits that it violates § 3553(a):

> (a)     FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)  the need for the sentence imposed—
>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B)  to afford adequate deterrence to criminal conduct;
>> (C)  to protect the public from further crimes of the defendant; and
>> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3)  the kinds of sentences available;
> (4)  the kinds of sentence and the sentencing range established for—  . . .

In the scheme of things, this enhancement is legally and factually unjustified here and it should be rejected.

## C.     The 2020 BLM Molotov cocktail cases in this District

Also *compare United States v. Lung'aho,* 4:20-cr-00288-DPM (E.D.Ark.), prosecuted in this district involving firebombing police vehicles in Pulaski County with Molotov cocktails where apparently no such enhancement will be applied.  In defendant Jeffries's case, *id.* Doc. 203 ¶ 3A, her plea agreement is to a superseding information to a 18 U.S.C. § 371 conspiracy with a five year maximum. She was indicted, however, for use of a weapon of mass destruction, which a Molotov

cocktail is, which was a 30 years to life offense.

Lung'aho and his co-conspirators destroyed police property in Pulaski County by throwing Molotov cocktails during the George Floyd murder protests. Yet, no terrorism enhancement there. Defendant destroyed no property and threatened no one, and he was in Yemen threatening no U.S. person or property with violence. Yet, it applies here?

CONCLUSION

The terrorism enhancement should be struck and not considered.  If the court overrules defendant's objection, then it should ignore the enhancements for a denial of due process and equal protection.

Defendant's crime is minimal in the overall scheme of things.  He was far less of a threat to America and *any* of the January 6th insurrectionists. He didn't say "Hang Mike Pence" and watch a gallows be built. He didn't support the idea like the former President.[8] This enhancement is overkill, inapplicable, and  unnecessary to promote respect for the law.

Defendant's sentence should be no more than 48 months, or even time served because he's been in custody for 37 months.[9] That's reasonable under § 3553 and appropriate for the crime and will deter others.[10]  It is near the low end of the original range from PSR Drafts 1 and 2, and it still upholds the Rule of Law.

---

[8]  *See* note 7.

[9] And it's all been in the Conway County Jail.  County Jail is hard time: No programs, little or no recreation.  It's just warehousing.

[10]  From the comments in the press, few of the January 6th insurrectionists are deterred and would do it again, even when sentenced to prison.  Some clearly are.  Many clearly are not.  They are motiviated by something far more insidious that what motivated defendant to ride as security for the Al'Qaida leader in Yemen's civil war.

Respectfully submitted,

JOHN WESLEY HALL
  Ark. Bar No. 73047
1202 Main St.; Suite 210
Little Rock, Arkansas 72202-5057
(501) 371-9131 / fax (501) 378-0888
e-mail:  ForHall@aol.com
  *Attorney for Defendant*